## EVELYN GOSNELL BARGER
*vs.*
## TOWN OF WESTPORT

Superior Court       Fairfield County       File No. 58434

MEMORANDUM FILED JULY 16, 1940.

*Norris Rossinoff*, of Bridgeport, for the Plaintiff.

*Harry R. Sherwood*, of Westport, for the Defendant.

BOOTH, J.    The plaintiff is the owner of a 25 acre farm located on the east side of Bayberry Lane in the Town of West-port.    Situated in the northwesterly corner of this farm is a lot containing about one acre.    It is bounded on the west by Bayberry Lane; on the north by land known as the Reynolds property; on the east by a brook and on the south by property of the plaintiff.    It is the only portion of the plaintiff's farm involved in the present action.    This lot slopes from the west to the east and from the north to the south; Bayberry Lane on the west being some 30 feet higher than the easterly portion of the lot and the Reynolds property on the north being sub-stantially higher than the southerly portion of the lot.    In short it is a side-hill portion of a valley which extends from the northwest to the southeast, the top grade of which valley is located several hundred feet north of the northerly line of plaintiff's property.

According to the allegations of the complaint, this lot has become damaged by surface water which is alleged to have been diverted from its natural channels by means of a culvert or drain and by a so-called water hole which permits the water to flow upon the property otherwise than naturally.    It is further alleged that the defendant constructed the culvert or drain and permitted the so-called water hole to be created.

The evidence and personal examination of the premises by the court disclosed that the culvert complained of was con-structed by the defendant town and that is had existed in its present location for the past 50 years.    Originally it was com-posed of stone and about 15 years ago an iron pipe one foot in diameter was placed inside thereof.    It extends underneath the surface of the road from the west to the east side of Bay-berry Lane and carries surface water from the west gutter of Bayberry Lane and discharges it upon the aforesaid Reynolds

lot at a point thereon about 120 feet north of the plaintiff's north line. This is the water which the plaintiff claims has damaged a portion of her land. Her claim is that after being deposited on the Reynolds lot the water escapes from underneath the stone wall which separates the two properties and flows onto the northerly portion of her lot. While it is probably true that during heavy storms and perhaps during the snow melting season some quantity of water does flow from the Reynolds lot onto the property of the plaintiff and possibly at times some water may flow onto the plaintiff's property from springs which Mr. Rippe testified existed on the Reynolds lot this is the natural and reasonable result to be expected where one lot is higher than the other. The court cannot, however, conclude from the evidence that any part of the water which is discharged upon the Reynolds lot from the aforesaid culvert ever finds its way to the plaintiff's property. According to the testimony of Mr. Mansfield the Reynolds lot is made moist by water which comes through the culvert for a distance of only six feet east of Bayberry Lane, and according to the testimony of Mr. Lewis the Reynolds lot is rendered moist by such water not more than 19 feet east of Bayberry Lane even after a storm. It must also be remembered that there is an area of the Reynolds lot 120 feet wide between the northerly line of the culvert and the northerly line of the plaintiff's lot which area obviously affords abundant opportunities for diffusion and absorption of any water which flows from the aforesaid culvert. At the time the court inspected the premises there was a dry gully upon the plaintiff's land. This gully was about one foot in depth and from one to one and one-half feet in width. It began in the northwesterly section of the plaintiff's lot a considerable distance south of the plaintiff's northerly line and ran in an "S" shaped course and in a general southeast direction for a distance of about 75 to 100 feet. According to the evidence this gully in a modified form had existed for some time but during the hurricane in September, 1938, it was considerably extended as a result of unusual weather conditions, then obtaining and apparently had been allowed to remain undisturbed ever since. No direct evidence was offered concerning the creation of the gully. It may once have formed the bed of an overflow from an underground spring or it may be the natural course of springtime surface water flowing from the northwest corner of the plaintiff's land. The claim of the plaintiff is that it was caused by water which flowed from the Reynolds

lot. This may be true, but from such evidence as the plaintiff produced upon the subject the court is unable to determine the origin of the gully. Certainly the defendant did not create it unless it may be said to have been formed by water which came from the culvert in question, but in view of the court's previously expressed conclusion concerning that feature, any such claim must be discarded as unsound. In any event, it is found that the plaintiff has failed to establish by a proper weight of the evidence that her land was damaged by any water which came from the culvert in question.

This conclusion automatically disposes of the plaintiff's claim concerning a diversion by the plaintiff of surface water which is claimed formerly flowed northerly at the intersection of Cross Highway and Bayberry Lane as such water is only claimed to have increased the volume which ran through the aforesaid culvert.

The water hole referred to in the plaintiff's complaint appears to relate to a condition which the plaintiff claims exists on the westerly side of Bayberry Lane some 100 feet or more south of the aforesaid culvert. Her claim is that the defendant permits water to accumulate in the west gutter of Bayberry Lane at this point, which water she claims percolates underneath the surface of the road and thence upon her property. The entire surface of the land in that vicinity slopes sharply from the west to the east and from the north to the south. To the west of the gutter in question there is a high bank in which springs are located and water apparently runs along the gutter in a southerly direction on its way to a brook which crosses Bayberry Lane some distance to the south. There is no satisfactory evidence, however, that this water found its way to the plaintiff's land or that the defendant allowed it to accumulate in the gutter in question. Indeed there was no evidence apparent, upon inspection, of damage by water to the plaintiff's land at the point now under discussion. The claim of the plaintiff concerning this feature of the case is likewise found not to have been property established by the evidence.

In view of the foregoing, judgment may enter for the defendant upon the issues of all the counts of the plaintiff's complaint and for the defendant to recover of the plaintiff its costs.